IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**KATE BRAVERMAN**,

      Plaintiff,

v.                                                                         CIV. 11-0009 RB-LFG

**LPL FINANCIAL CORPORATION**, a California
Foreign Profit Organization,[1] **MARK CASADY**, CEO,
LPL Financial Corporation, **BRAD JACOBS**, Vice
President, LPL Financial Corporation, **ERIC AANES**,
Agent and Broker, LPL Financial Corporation,
**PATRICIA FLORES**, Broker, LPL Financial Corporation,
**LEWIS & ROCA**, a New Mexico Law Firm, **ROSS
CROWN**, Attorney, Lewis & Roca,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on (i) *Plaintiff's Motion to Attach Real Property of Defendant Ross Crown*, filed January 14, 2011 (Doc. 18), and (ii) *Defendants Lewis and Roca LLP and Ross Crown's Motion to Dismiss*, filed January 28, 2011 (Doc. 21). Having considered the motions and briefs submitted by the parties, and the relevant authority, I find that the motion to dismiss should be granted and the motion to attach real property should be denied as moot.

**I.  BACKGROUND**

Pro se Plaintiff Kate Braverman entered into an investment contract with Defendant LPL Financial Corporation involving $2.4 million in investments. Doc. 1 ("Compl.") ¶ 1, at 1; ¶ 54, at 8. The investment accounts at issue, Braverman's Main and Inland Account in her LPL "Strategic

---

[1]Defendants note that LPL Financial Corporation became, as of November 15, 2010, LPL Financial LLC, a California limited liability company. *See* Doc. 21 n. 1, at 1.

Wealth II" accounts, were overseen by Defendant Eric Aanes, a registered broker for LPL, and were serviced by LPL. *See* Compl. ¶¶ 16-17, at 3.

According to the Complaint, every account summary Braverman received pertaining to a Farm Bond stated that the face value of the Farm Bond was $110,000. *See id.* ¶ 5, at 2. In actuality, the "current true market value for one Federal Farm Bond is approximately $11,000." *Id.* Between September 30, 2009 and October 31, 2010, LPL assessed Braverman's accounts "70 basis points annually, or 7/10 of 1% of the net value of the accounts as a management fee," payable in advance, quarterly. *Id.* ¶ 19, at 3. The net value charged was stated on the account summaries mailed to Braverman monthly.[2] *See id.* ¶ 20, at 4. Therefore, Braverman concludes, LPL overcharged her for management fees. *See id.* ¶ 22, at 4.

Braverman further alleges that Defendant Aanes falsely "represent[ed ]the value of $150,000 stock of an unlisted real investment trust, Inland American Real Estate Trust (Inland)." *Id.* ¶ 3, at 1. Braverman believes that the Defendant "knew or should have known" that both the Securities and Exchange Commission and the U.S. Department of Justice were investigating Inland at the time of the purchase. *See id.* ¶ 3, at 1-2. Because of this misrepresentation of value and the failure to inform Braverman of the investigations, Braverman authorized the purchase of 15,000 shares of Inland stock at a grossly inflated price. *See id.* ¶¶ 50-51, at 7-8.

Braverman also asserts that the "Defendant [LPL] and its agents and employees failed to sell and reinvest in an interest bearing account" a Lehman Brothers Bond, and as a result, she sustained a net loss of $90,000. Id. ¶ 4, at 2; *see id.* ¶ 52, at 8 (stating that the later sale of the bond "result[ed]

---

[2]Braverman states that the account summaries are attached to her complaint "as exhibits A-K," but instead where those exhibits should be attached, there is a page stating "Exhibits A-K in Defendants' Possession." *See* Compl. The Court is unable to consider documents that are not actually provided and filed of record.

in the devaluation of Plaintiff's portfolio by $88,000").

As to Defendants Lewis and Roca and Crown, Braverman alleges that they "illegally abus[ed] the legal process [by] filing a temporary restraining order against [Plaintiff]" in state court. *Id.* ¶ 41, at 6. She also alleges that these Defendants engaged in "an act of mail fraud [in] misrepresent[ing] the reason for [Plaintiff's] account miscalculation." *Id.* ¶¶ 120, at 18. Braverman is involved in three state-court proceedings that involve the same Defendants in this case. In one suit, Defendants Jacobs and LPL, through their attorneys Lewis and Roca and Crown, applied for a temporary restraining order against Braverman and Andrew Ross,[3] styled as *Jacobs v. Braverman*, Case No. D-101-CV-2010-02821. *See* Complaint ¶ 41, at 6 and Ex. M (Doc. 1-2). The order references Braverman's divorce matter, *Braverman v. Goldstein*, Case No. D-101-DM-2009-01009, in which the divorce court ordered that Braverman could not unilaterally control certain of her investment accounts until her husband's claim of right to some of the assets could be determined. *See id.* And in September 2010, Defendant LPL, again through its counsel Lewis and Roca and Crown, demanded arbitration of Braverman's claims in Braverman's state-court lawsuit styled *Braverman v. LPL Financial et al*, Case No. D-101-CV-2010-03120. *See* Doc. 21, Ex. 3 (Doc. 21-3). The letter discusses the Farm Bond and Inland stock. *See id.* at 3.

Braverman asserts that Jacobs' and LPL's action for a temporary restraining order "was dismissed by judicial order." Compl. ¶ 41, at 6. The Honorable David K. Thomson, a District Judge in the First Judicial District Court who had formerly presided over Braverman's divorce proceedings, ordered restrictions on Andrew Ross's interactions with the plaintiffs in that matter;

---

[3]According to an attachment to Braverman's Complaint, Ross claims to be Braverman's "best friend" and threatened Defendant Jacobs that, if Jacobs did not quit causing Braverman financial harm, Ross would place Jacobs under a citizen's arrest and take him to the state police. *See* Compl., Ex. M at 3.

3

required LPL to provide Braverman with a different administrator with whom to communicate regarding her accounts; and denied Braverman and Ross's counter petition for an interpretation of a Temporary Domestic Order that had previously been filed in the separate divorce proceeding that restricted the transfer of Braverman's assets because Braverman's ex-husband was not a party and because Judge Singleton subsequently presided over the divorce proceedings. *See id.*, Ex. M. Braverman alleges that "Lewis and Roca and Crown furthered Defendant LPL's fraudulent scheme to defraud its customer through the filing of malicious legal process," *id.* ¶ 55, at 8, and that "all Defendants . . . sent fraudulent account statements across state lines resulting in the overvaluing of the account in order to obtain higher management fees . . . ." *id.* ¶ 49, at 7.

From August 10, 2010 through October 31, 2010, despite Braverman's repeated requests, Defendant Patricia Flores, an LPL agent, "refused to liquidate Plaintiff's bond portfolio." *Id.* ¶ 46, at 7. As a result of that refusal, Braverman "lost approximately $30,000 of value due to subsequent declines in market value." *Id.* Flores also fraudulently advised Braverman that the inaccurate amounts in her account were the result of market fluctuations. *See id.* ¶ 48, at 7.

Based on these facts, Braverman brought federal claims for violation of the federal RICO statute (listing "mail and wire fraud" as the two predicate acts) against all Defendants, and state-law claims against LPL and its employees for "Fraud, Breach of Contract, Breach of Good Faith and Fair Dealing, Negligence, Conversion, and Unjust Enrichment." *Id.* ¶ 2, at 1, and titles of counts located at pages 8-22.

On January 14, 2011, Braverman filed a motion to attach Crown's real property because, generally, he is allegedly actively participating in fraud against her; his actions have allegedly cost her in excess of one million dollars; his "net worth is totally encompassed in the value" of his property located in Bernalillo County, New Mexico; and she has "no other method for securing her

4

expected judgment against" Crown. Doc. 18.

On January 28, 2011, Lewis and Roca and Crown moved for dismissal of "all claims brought against them" pursuant to FED. R. CIV. P. 12(b)(6). Doc. 21 at 1. Specifically they assert that (i) Braverman's claims "arise out of the purchase and sale of securities and are therefore barred under the Private Securities Litigation Reform Act ('PSLRA');" (ii) Braverman has "not alleged two or more predicate acts" to establish a pattern of racketeering under the Racketeer Influenced and Corrupt Organizations Act ("RICO"); and (iii) Braverman has not been injured because the excess management fees were refunded to her and she therefore does not have standing to bring her claims. *See* Doc. 21 at 1.

## II.  STANDARD

To survive a motion to dismiss,

a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement" but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (internal citations omitted). Courts must carefully scrutinize a plaintiff's complaint to determine if an actionable claim is asserted. The pleading standard of FED. R. CIV. P. 8 does not require "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), but the Rule "demands more than an unadorned, the-defendant-unlawfully-harmed-me" account. *Iqbal*, 129 S. Ct. at 1949. The Court "will not supply additional facts, [or] construct a legal theory for [a] plaintiff that assumes facts that have not been pleaded." *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989).

> Two "working principles" underlie the *Twombly* standard. *Iqbal*, 129 S. Ct. at 1949.
>
> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Id.* at 1949-50 (internal citations omitted). Accordingly, to evaluate a motion to dismiss, the Court engages in a two-part inquiry by initially identifying those allegations that are nothing more than legal conclusions and therefore "not entitled to the assumption of truth," and then by considering whether the factual allegations "plausibly give rise to an entitlement to relief." *Id.* at 1950. "[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

### III.   ANALYSIS

Braverman asserts that the Court has jurisdiction over her claims pursuant to "18 U.S.C. [§] 1964, 28 U.S.C. [§] 1331 and 28 U.S.C. [§] 1367." Compl. ¶ 7, at 2. "'Federal courts are courts of limited jurisdiction; they must have a statutory basis for their jurisdiction.'" *Nicodemus v. Union Pac. Corp.*, 318 F.3d 1231, 1235 (10th Cir. 2003) (quoting *Morris v. City of Hobart*, 39 F.3d 1105, 1111 (10th Cir. 1994)). The two statutory bases for federal subject-matter jurisdiction are diversity jurisdiction under 28 U.S.C. § 1332 and federal-question jurisdiction under 28 U.S.C. § 1331. *See Nicodemus*, 318 F.3d at 1235. The law imposes a presumption against federal jurisdiction, therefore, "[t]he party invoking federal jurisdiction bears the burden of establishing such jurisdiction as a threshold matter." *Radil v. Sanborn W. Camps, Inc.*, 384 F.3d 1220, 1224 (10th Cir. 2004).

The federal statute upon which Braverman bases the Court's federal-question jurisdiction is RICO. RICO provides a means of redress "for those injured in business or property by reason of prohibited racketeering activities." *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010). To state a claim under RICO, a plaintiff must demonstrate that the defendant "(1) participated in the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Resolution Trust Corp. v. Stone*, 998 F.2d 1534, 1541 (10th Cir. 1993) (citing *Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1273 (10th Cir. 1989)). A pattern of racketeering activity requires, at a minimum, two predicate acts. *See id.* at 1543. And, the plaintiff must show that she was injured by the defendant's acts. *See Robbins v. Wilkie*, 300 F. 3d 1208, 1210 (10th Cir. 2002).

The PSLRA, however, expressly bars civil RICO claims predicated on activities taken "in connection with the purchase or sale of securities." *See Bixler*, 596 F.3d at 759-60. A fraud is "in connection with" a purchase or sale of securities when there are "deceptive practices touching [upon the purchase or] sale of securities as an investor." *Superintendent of Ins. v. Bankers Life & Cas. Co.*, 404 U.S. 6, 12-13 (1971).

Defendants contend that the act of which Braverman complains is that "LPL, with Defendants' assistance, inflated the value of securities to collect larger brokerage commissions" and therefore she is alleging fraud "in connection with the purchase or sale of securities." Doc. 27 at 6. *See* Compl. ¶¶ 22-23, at 4; ¶ 49, at 7. Although the Court construes the facts as set forth by a plaintiff as true, in accordance with the standards set forth in *Iqbal*, it will consider here only the actual factual allegations set forth in the Complaint, not those that are legal conclusions clothed as facts.

Braverman argues, in response, that the Farm Bond and Inland stock[4] are not securities. *See* Doc. 24 at 2-3. Nevertheless, in her Complaint, Braverman acknowledges and asserts that

> [a]ll public traded securities, including Federal Farm Bonds, have a number issued by the Committee on Uniform Securities Identification Procedure (CUSIP). All financial institutions are required by FINRA regulations to obtain a closing price for all CUSIP securities and to value customer's accounts accordingly. By complying with FINRA procedure, all securities valuation would be accurate. The misvaluation of a security's value thus indicates a widespread systematic scheme to inflate account values on the part of Defendant LPL and its agents and employees.

Compl. ¶ 24, at 4. She further contends:

> Since stocks and bonds have a CUSIP number and since all financial institutions are required by FINRA regulations to obtain a closing price for all CUSIP securities and to value customer's accounts accordingly, Defendant LPL engaged in a wide range of illegal activity, overvaluing its clients' accounts, like those belonging to Plaintiff.

*Id.* ¶ 28, at 5.

The Securities Act of 1933 includes as securities "commonly known documents traded for speculation or investment." *SEC. v. W.J. Howey Co.*, 328 U.S. 293, 297 (1946). More specifically,

> [t]he term 'security' means any note, stock, treasury stock, bond, . . . or, in general, any interest or instrument commonly known as a 'security' . . . .

15 U.S.C. § 77b(1). The Court considers four factors in determining whether an instrument is a security: "the motivations of the buyer and seller; the plan of distribution for the instruments; the public's reasonable perceptions; and whether there are any risk-reducing factors suggesting that the instruments are not securities." *Resolution Trust Corp.*, 998 F.2d at 1538 (citing *Reves v. Ernst & Young*, 494 U.S. 56, 66-67 (1990)). Generally, "[i]f the seller's purpose is to raise money for the general use of a business enterprise or to finance substantial investments and the buyer is interested

---

[4] Braverman's allegations with regard to the Lehman Brothers Bond appear to be limited to the failure to sell and reinvest the proceeds. *See* Compl. ¶ 4, at 2. She makes no reference to this bond being overvalued or repriced and makes no argument regarding whether they are securities.

primarily in the profit the note is expected to generate, the instrument is likely to be a 'security'" *Id.* at 1538-1539 (quoting *Reves*, 494 U.S. at 66). It is clear in the Complaint that Braverman did invest in the Farm Bond and Inland stock expecting to make a profit. The bond and stock are offered and sold to the public. The plan of distribution, then, is that the instruments are commonly traded for speculation or investment. *See id.* at 1539. The bond and stock are also generally advertised as investments, which in the public's reasonable perception would indicate a security. *See id.* Lastly, there have been no risk-reducing factors presented to suggest that the bond and stock are not securities. Accordingly, even ignoring Braverman's admission in the Complaint as stated above,[5] considering all of the determining factors, the Farm Bond and Inland stock are securities.[6] Braverman's arguments that the bond and stock are not securities fail.

Braverman next asserts that the PSLRA does not apply because her RICO claims do not involve the purchase or sale of securities. The Court has already determined that the Farm Bond and Inland stock are, in fact, securities. Braverman, however, takes the analysis one step further

> To reiterate, underlying her RICO claims is the allegation that LPL was inflating the value of her accounts as a means of obtaining higher management fees. No sale or purchase of securities was involved in this malfeasance by LPL.

Doc. 24 at 5. The "in connection with" language of the PSLRA is interpreted broadly and Rule 10b-

---

[5] Braverman also states in her Complaint, in reference to the Inland stock, "[t]he stock is entirely worthless since there is no market for these unlisted securities." *See* Compl. ¶ 51, at 7-8.

[6] The paper "enhanced automobile receivables (EAR)," to which Braverman attempts to compare her securities is quite different from the Farm Bond and Inland stock, and are not securities. *See* Doc. 24 at 2-3. Farm Bonds and Inland stock are sold on the public market and are used to raise money for general investment; EARs are sold on the secondary market, are not available to a large portion of the general public, and are collateralized by vehicles. *See Resolution Trust Corp.*, 998 F.2d at 1537-39.

5[7] includes misrepresentations "beyond those implicating the investment value of a particular security." *Angelastro v. Prudential-Bache Sec., Inc*., 764 F.2d 939, 943 (3rd Cir. 1985). Activities such as mail fraud, wire fraud, bank fraud, and interstate travel in support of racketeering activities are considered to be undertaken in connection with the purchase of a security, despite also possibly constituting illegal or fraudulent acts. *See Bixler*, 596 F.3d at 760. Charging excessive management fees and expense recovery charges also fall under the classification of securities fraud. *See Ettinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 835 F.2d 1031, 1033 (3rd Cir. 1987). A plaintiff may not dissect her claims through artful pleading in order to circumvent the PSLRA exclusion. *See Bixler,* 596 F.3d at 760. Braverman's RICO claims against all Defendants stem from activities occurring "in connection with" the purchase and sale of securities, which cannot serve as the foundation for a civil RICO claim. Her RICO claims will, therefore, be dismissed against all Defendants.[8] Braverman has not alleged any facts to support any of the state-law claims she lists against Lewis and Roca and Crown. Because the RICO claims served as Braverman's only basis for federal-question jurisdiction, unless there is another basis for federal jurisdiction, the Court will decline to take supplemental jurisdiction over the state-law claims against the remaining Defendants.

The Court would only retain jurisdiction over Braverman's remaining state-law claims if

---

[7]15 U.S.C. § 78(b).

[8]Because there is no viable RICO claim, no detailed analysis into the role Lewis and Roca or Crown played in the calculation of management fees and the management of Braverman's investment accounts or of the alleged acts of racketeering are necessary. And even though the remaining Defendants have never filed an answer to the Complaint (perhaps because they may not have been properly served, *see* Doc. 21, Ex. 1 (letter from Crown advising that it had no authority to accept service of process for LPL or any of its agents or employees)), the Court may still *sua sponte* dismiss the RICO claims against all Defendants because they are without merit as a matter of law; they cannot be salvaged by amendment; and Braverman has had a full opportunity to brief why the RICO claims are not cognizable. *See Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001).

diversity jurisdiction was established.[9] For the district courts to have diversity jurisdiction: (i) the matter in controversy must exceed the sum or value of $75,000, exclusive of interest and costs, and (ii) the suit must be between

>
> (1) citizens of different States;
>
> (2) citizens of a State and citizens or subjects of a foreign state;
>
> (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and
>
> (4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

28 U.S.C. § 1332(a). The lack of complete diversity of the parties destroys the Court's diversity jurisdiction. "[T]he district court must determine the jurisdictional facts as they are when the complaint is filed, not as they might be upon final judgment." *Symes v. Harris*, 472 F.3d 754, 758 (10th Cir. 2006) (holding that district court must determine diversity of parties at the time of the filing of the suit).

The statutory diversity requirement is "complete diversity;" no party on one side of a dispute

---

[9]Defendants argue that Braverman lacks standing to bring the suit because she has not suffered any injury. *See* Doc. 21 at 8. They assert that

> [i]t is true that the Farm Bond was incorrectly valued and that management fees were inadvertently assessed based on a pricing error in the valuation of the Farm Bond. Nevertheless, after determining that excess fees had been charged, LPL credited all of the excess fees back to Plaintiff's account.

*See id.* In contrast, in her Complaint, Braverman asserts "Plaintiff has made an unavailing demand for return of such monies," Compl. ¶ 140, at 21-22 and "LPL has retained monies in overvaluing Plaintiff's investments and extracting higher management fees to which it was not justly entitled." *Id.* ¶ 143, at 22. In her response, Braverman asserts that she was injured by the higher management fees extracted from her accounts. *See* Doc. 24 at 2. Because this is a motion to dismiss, the facts as presented by her, as pro-se plaintiff, in her Complaint are considered to be true. Dismissal can not be granted based on this argument.

may share citizenship with any party on the other side of a dispute. *See McPhail v. Deere & Co.*, 529 F.3d 947, 951 (10th Cir. 2008). For diversity-jurisdiction purposes, citizenship is determined by a person's domicile. *See Crowley v. Glaze*, 710 F.2d 676, 678 (10th Cir. 1983). The presence of a non-diverse party automatically destroys federal diversity jurisdiction. *See Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 389 (1998). Here, Crown, like Braverman, is a resident of New Mexico. *See* Doc. 1 ¶ 15, at 3. There was not complete diversity in this lawsuit at the time suit was filed.

As noted, one of Braverman's continuing state-law complaints is that LPL, and its agents, employees, etc., caused her to lose a significant amount of money. *See* Compl. ¶¶ 46-52, at 7-8. Clearly, these parties have already fully engaged the state court for resolution of their legal disputes and issues. The Court does not have diversity jurisdiction over this lawsuit and the only federal claim has been dismissed; therefore the Court will decline to take jurisdiction over the state-law claims and will dismiss them without prejudice.[10]

**IT IS THEREFORE ORDERED** that *Defendants Lewis and Roca LLP and Ross Crown's Motion to Dismiss* (Doc. 21) is **GRANTED** and all of Plaintiff's RICO claims [Counts One and Two] are DISMISSED with prejudice against all Defendants and her state-law claims [Counts Three through Eight] against LPL and its employees are DISMISSED without prejudice;

**IT IS FURTHER ORDERED** that *Plaintiff's Motion to Attach Real Property of Defendant Ross Crown*, filed on January 14, 2011 (Doc. 18) is **DENIED** as moot.

_____
UNITED STATES DISTRICT JUDGE

---

[10]In her Complaint, Braverman asked to represent a class and to have liberal discovery. Because the Court is dismissing the Complaint, it need not discuss these requests.